UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OMNIPOINT HOLDINGS, INC, <br><br> Plaintiff, <br><br> v. <br><br> THE TOWN OF SAUGUS, THE ZONING BOARD OF APPEALS OF THE TOWN OF SAUGUS, CATHERINE A. GALENIUS, ROBERT J. COX, BEN STURNIOLO, PETER ROSSETTI, JR. and PETER BOGDAN in their capacities as members of the Saugus Zoning Board of Appeals, <br><br> Defendants. | RECEIPT # 57132 <br> AMOUNT $ 150.00 <br> SUMMONS ISSUED ✓ <br> LOCAL RULE 4.1 ✓ <br> WAIVER FORM ____ <br> MCF ISSUED ____ <br> BY DPTY. CLK. CMG <br> DATE 7-9-04  Civil Action No. <br><br> 04-11537 NG <br><br> MAGISTRATE JUDGE Alexander |

## COMPLAINT

This action arises out of the unlawful denial by the Saugus Zoning Board of Appeals ("Zoning Board") of an application, pursuant to the Town of Saugus Zoning By-Laws ("By-Laws") by Omnipoint Holdings, Inc. ("Omnipoint") for a use variance to allow Omnipoint to install three wireless communications panel antennas within a proposed cupola to be constructed on top of the church building at 83 Chestnut Street, Saugus, Massachusetts. The antennas, the accompanying equipment cabinets, which would be located in an attic of the church, and all coaxial cable, which would be within the building, would have no adverse aesthetic impact upon the area, as they would not be visible from outside the church building. This denial violates the Federal Telecommunications Act of 1996, 47 U.S.C. § 332. As a result, Omnipoint seeks an injunction from this Court directing the Zoning Board to grant Omnipoint's application for a use variance and for an injunction and order of mandamus directing the Town, through its officers

and agents, to issue a building permit with respect to the construction of the cupola and wireless communications facility.

## PARTIES

1. Plaintiff, Omnipoint, is a Delaware corporation with a principal place of business at 50 Vision Boulevard, East Providence, Rhode Island. Omnipoint is a leader in commercial wireless Personal Communication Services ("PCS") throughout the United States. Omnipoint successfully bid upon and received PCS wireless broadcast licenses from the Federal Communications Commission ("FCC") for several cities, including the greater Boston area.

2. Defendant, the Town of Saugus, (the "Town"), is a duly authorized municipality constituted and existing under the laws of the Commonwealth of Massachusetts.

3. Defendant, the Zoning Board, is a duly authorized unit of the Town that has been delegated the authority, among other things, to grant special permits and variances under the By-Laws. A true and accurate copy of the By-Laws is attached hereto as Exhibit A.

4. Defendants, Catherine A. Galenius, Robert J. Cox, Ben Sturniolo, Peter Rossetti, Jr. and Peter E. Bogdan are each residents of the Town and together serve as the Zoning Board that denied Omnipoint's application for the use variance at issue in this action.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically § 332 of the Federal Telecommunications Act of 1996.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b), since the defendants each reside in this District, and the events and/or omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

### The Personal Communications Service Technology

7. Omnipoint is a communications venture committed to providing integrated wireless personal communications services by building a national wireless network using PCS technology. PCS technology is a new generation of wireless service that uses digital transmission to improve the services available to consumers.

8. Unlike cellular services using analog-based systems, PCS digital technology converts voice or data signals into a stream of digits to allow a single radio channel to carry multiple simultaneous signal transmissions. This allows Omnipoint to offer services often unavailable in analog-based systems, such as secured transmissions and enhanced voice, high-speed data, paging and imaging capabilities as well as voice mail, call forwarding and call waiting.

9. Mobile telephones using PCS technology operate by transmitting a radio signal to antennas mounted on a tower, pole, building, or other structure. The antenna feeds the signal to electronic devices housed in a small equipment cabinet, or base station. The base station is connected by microwave, fiber optic cable, or ordinary telephone wire to the Base Station Controller, subsequently routing the calls throughout the world.

10. Because the PCS system has a lower signal and a much higher frequency than traditional cellular technology, the range between the PCS mobile telephone and the antennas is limited.

11. In order to provide continuous service to a PCS telephone user, coverage must overlap in a grid pattern resembling a honeycomb. In the event that Omnipoint is unable to construct a cell site within a specific geographic area, Omnipoint will not be able to provide service to the consumers within that area.

12. Omnipoint's engineers use complex computer programs and extensive field testing

3

to complete a propagation study, which shows where cell sites need to be located in order to provide service. The propagation study also takes into account the topography of the land, the coverage boundaries of neighboring cells and other factors. In order for the entire system to be operational, there must be properly placed cell sites installed and functioning so that seamless coverage can be realized, and only when the entire system is operational will a PCS telephone user have service and an uninterrupted conversation throughout a given territory. If there is no functioning cell site within a given area, there would be no PCS telephone service for customers within that area, and mobile customers who travel into the area will experience blocked calls, in which callers experience an abrupt and complete loss of signal.

13. Based upon Omnipoint's research and analysis as part of an extensive review of call traffic in the targeted area of Saugus, Omnipoint determined that, in order to fill a significant gap in the quality of its coverage, which would otherwise preclude its provision of seamless, uninterrupted coverage in the targeted portion of Saugus, Omnipoint needed to mount three panel antennas in the immediate vicinity of 83 Chestnut Street, Saugus.

14. Omnipoint determined that the only alternative site in the immediate vicinity of 83 Chestnut Street, Saugus, would require a construction of a free-standing telecommunications tower.

15. Because the area is residential in nature, Omnipoint sought, through its design and its application, to construct a cupola on the Methodist Church building at 83 Chestnut Street and install panel antennas within the cupola so as to minimize the visual and aesthetic impact of its proposed wireless facility upon the neighborhood.

16. 83 Chestnut Street is in an area zoned for residential use within the meaning of Article V of the By-Laws.

**Federal Statutory Control Over PCS Siting**

17. Section 704 of the Federal Telecommunications Act of 1996 (the "Act"), 47 U.S.C. § 332(c), governs federal, state and local government regulation of the siting of PCS facilities such as the one at issue here.

18. The Act provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with § 332(c)(7) of the Act may seek expedited review in the federal courts. 47 U.S.C. § 332(c)(7)(B)(v).

**The Request for A Use Variance**

19. On or about March 31, 2004, Omnipoint applied, pursuant to Article V of the By-Laws, for a use variance to allow the property at 83 Chestnut Street to be used for a non-residential use.

20. Under Article V of the By-Laws, (Section 5.1), "no building, structure or land shall be used except for the purposes permitted in the (zoning) district as described in this Article. Any use not listed shall be construed as prohibited".

21. Article XIV of the By-Laws establishes a wireless overlay district for the placement of wireless communications facilities. The Board has interpreted Article XIV to regulate the placement of all types of wireless communications facilities, a position at odds with a written opinion previously submitted to the Town by Saugus' Town Counsel, who opined that the district was created to regulate the placement of ground mounted facilities only.

22. Because Omnipoint's coverage gap could not be remedied by placement of a wireless communications facility within the wireless communications services district, Omnipoint sought a use variance to place its proposed facility at the 83 Chestnut Street site described above.

23. Article XIV places certain use restrictions upon wireless communications facilities located within the wireless communications services district. Omnipoint sought variances, within

5

the application it filed on or about March 31, 2004, from several of these restrictions. However, because the wireless communications facility proposed by Omnipoint is located outside the wireless communications district, these restrictions have no bearing on the wireless communications facility for which Omnipoint sought a use variance.

24. The Zoning Board held a single hearing on Omnipoint's application. At the hearing, Omnipoint presented evidence, which was not refuted, regarding the gap in its coverage and its corresponding need for the antennas it proposed to place within the church building. Additionally, Omnipoint presented evidence of the lack of alternative sites in the area that would allow it to provide seamless, uninterrupted service to its customers.

25. Omnipoint demonstrated that the cupola it sought to build on the Methodist Church building at 83 Chestnut Street for the purpose of housing its antennas would be a unique structure in the residential zoning district of sufficient height to enable Omnipoint to fill its significant gap in coverage. Further, it demonstrated that it could not address the gap in the quality of its coverage unless allowed to place its antennas at or near the proposed 83 Chestnut Street site.

26. At the hearing, a single member of the public voiced opposition to the variance for which Omnipoint applied. She expressed concern about the "health effects" of the proposed facility.

27. At the hearing, the chairperson of the Zoning Board questioned Omnipoint's representative why Omnipoint had not learned, from the Board's March, 2004 denial of Omnipoint's request for a special permit to place antennas on a utility stanchion in Saugus' residential district, that the Zoning Board would not allow wireless communications facilities within districts other than the Town's wireless communications services district irrespective of whether a coverage gap existed which could not be serviced from the wireless overlay district.

28. On June 10, 2004, the Zoning Board voted unanimously to deny Omnipoint's request for a use variance, concluding, without specific grounds, that "there are no special conditions especially affecting the parcel and not generally affecting the zoning district in which it is located; that a literal enforcement of the zoning by-law will not involve substantial hardship, financial or otherwise, to the appellant (sic) and that relief cannot be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of the applicable provision of the zoning by-law". A true and accurate copy of the Zoning Board decision on Omnipoint's decision is attached hereto as <u>Exhibit B.</u>

## **COUNT I - Violation of the Telecommunications Act of 1996**

29. Omnipoint hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 28 above as if fully set forth herein.

30. Article VI, Clause 2, of the United States Constitution, commonly known as the Supremacy Clause, provides, in relevant part, that "[t]his Constitution and the Laws of the United States which shall be made in Pursuance thereof... shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

31. The Act governs the regulation of the placement, construction, and modification of personal wireless service facilities and, under the Supremacy Clause, preempts state laws and municipal ordinances or by-laws affecting such facilities to the extent that such laws, ordinances, and by-laws conflict with the Act.

32. Omnipoint's application for a use variance constitutes a request to provide "personal wireless services" within the meaning of the Act, and, as such, is entitled to the protection of the Act.

33. Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii): "Any decision by a State of local government or instrumentality thereof to deny a request to place, construct or modify personal

7

wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

34. Omnipoint's application for a use variance met all criteria required by the By-Laws in order to receive a variance.

35. Defendants have failed to meet their burden of producing substantial evidence supporting the Zoning Board's denial of Omnipoint's application for a use variance.

36. Consequently, the Zoning Board's decision violated the Act's prohibition on state or local governments denying the placement, construction and modification of personal wireless service facilities without substantial evidence and a written record. 47 U.S.C. § 332(c)(7)(B)(iii).

37. In light of the foregoing, the Zoning Board's action is in violation of, and preempted by, the Act and the Supremacy Clause, and should be set aside and enjoined by the Court on that basis.

38. Pursuant to 47 U.S.C. § 332(c)(7)(B), the "regulation of the placement, construction and modification of personal wireless service facilities by any State or local government or instrumentality thereof …(II)shall not prohibit or have the effect of prohibiting the provision of personal wireless services".

39. Omnipoint has established that the denial of its request for a use variance to build a cupola on the existing Methodist Church building at 83 Chestnut Street, Saugus, and to house three antennas within the cupola, would result in a significant gap in its provision of wireless communication services to its customers and that there are no alternative sites within the affected residential area on or from which it may otherwise fill its coverage gap.

40. Consequently, the Zoning Board's decision violated the Act's requirement that state or local governments not prohibit or effectively prohibit the provision of personal wireless services. 47 U.S.C. § 332(c)(7)(B)(II).

41. Accordingly, the Court should exercise its power to issue an order commanding the Zoning Board to grant the use variance for which Omnipoint applied.

**WHEREFORE,** Omnipoint respectfully requests the following relief as against the defendants:

1. An expedited review of the matters set forth in this Complaint;

2. An injunction mandating that the Zoning Board grant approval of Omnipoint's request for a use variance;

3. An injunction and order of mandamus directing the Town, through its officers and agents, to issue a building permit for the cupola upon the existing Methodist Church at 83 Chestnut Street, Saugus, the three antennas to be housed therein, and any appurtenant equipment necessary for construction, implementation and operation of the wireless telecommunications facility proposed in Omnipoint's application;

4. A judgment that the defendants' actions violated the Act and are therefore void and invalid;

5. An award of Omnipoint's damages caused by defendants' violation of the Federal Telecommunications Act of 1996;

6. An award of Omnipoint's costs of suit herein, including reasonable attorneys' fees; and

7.   Such other and further relief as the Court may deem just and proper.

                                      Respectfully submitted,

                                      OMNIPOINT HOLDINGS, INC.

                                      By its attorneys,

                                      */s/ William A. Worth*

                                      William A. Worth, Esq., BBO #544086
                                      Craig M. Tateronis, Esq., BBO #553628
                                      Prince, Lobel, Glovsky & Tye LLP
                                      585 Commercial Street
                                      Boston, MA 02109-1024
                                      Tel: (617) 456-8000
                                      Fax: (617) 456-8100

Date:   July 9, 2004